# COURT OF APPEALS OF VIRGINIA

**Record No. 1630-24-4**

STEVEN MCCALLA
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Raphael and Lorish

Argued at Fairfax, Virginia

Opinion Issued May 12, 2026

### FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel T. Lopez, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### PUBLISHED OPINION BY
### JUDGE LISA M. LORISH

The Commonwealth originally indicted Steven McCalla for unlawful wounding and later superseded that indictment with a charge for malicious wounding. McCalla argues that this is all the same "offense" under Virginia's speedy trial statute and, accordingly, his statutory speedy trial clock (which started here with the original indictment) ran out before his malicious wounding trial could take place. While we agree that both indictments were for the same offense, our precedent establishes an extratextual exception that controls this case. So long as the Commonwealth brings a subsequent indictment before the expiration of the preexisting speedy trial clock, the new indictment resets the clock entirely. Because McCalla's competency

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

evaluation tolled the speedy trial clock that began with the unlawful wounding indictment, the superseding indictment was brought before that clock expired, and the trial court correctly rejected McCalla's motion to dismiss the malicious wounding charge.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

In a speedy trial challenge, details and dates are important. That is particularly true here, where the number of continuances complicates the calculation of the speedy trial deadline. McCalla was first arrested for malicious wounding in November 2021 after he injured Ryan Temme. McCalla remained in custody and underwent a series of competency evaluations. As a result, his preliminary hearing was continued multiple times. McCalla then agreed to plead guilty to the lesser offense of unlawful wounding. Accordingly, the Commonwealth indicted him for unlawful wounding on June 26, 2023, which McCalla argues began his speedy trial clock, and the court set an anticipated guilty plea hearing for July 17, 2023.[2]

McCalla then changed his mind and did not enter a guilty plea at the July hearing. Instead, the court continued the matter until July 26, 2023. McCalla concedes that the period between July 17 and July 26 counts against the defense for speedy trial purposes. At the July 26 hearing, McCalla requested a jury trial. The Commonwealth requested a short continuance to August 2, 2023 to assess witness availability.

---

[2] The June 26, 2023 unlawful wounding indictment does not appear in the record.

On August 2, McCalla's counsel requested a trial date "at least 60 days from today's date, probably a little bit more than that, to get an evaluator set up" to meet the requirements for "notice of mental health evidence." His counsel added that he "had a manslaughter trial starting in mid-October going to early November." After the court suggested a date in the week of November 13, McCalla's counsel said, "I think we'll need to go into December" because he was "concerned about the amount of bandwidth [he was] going to have." The circuit court then scheduled the jury trial for December 5, 2023. A few months later, on October 17, 2023, McCalla's attorney requested a competency evaluation. On November 13, 2023, McCalla was found competent to stand trial.

The day before trial, on December 4, 2023, the Commonwealth moved to continue. The Commonwealth explained that it needed more time to obtain a malicious wounding indictment to supplant the existing unlawful wounding indictment. When the trial judge asked why this motion was being made the day before trial, the prosecutor admitted that obtaining the superseding indictment had "slipped through the cracks" due to work on other cases. McCalla objected to this continuance, arguing that the Commonwealth had been on notice since July that McCalla was not going to plead guilty to unlawful wounding and could have obtained a malicious wounding indictment at any point after July. The circuit court granted the motion to continue and set a status hearing for December 19, 2023 to reset the matter for trial.

On December 18, 2023, a grand jury indicted McCalla for maliciously wounding Temme. McCalla was arrested on the new indictment on January 3, 2024, and both charges were set for trial on February 5, 2024. On January 30, 2024, McCalla moved to dismiss the indictments, arguing that the indictments were for the same offense and that the statutory speedy trial clock on the first indictment had expired. The Commonwealth moved to nolle prosse the unlawful wounding charge on January 31, 2024.

- 3 -

The trial court held a hearing, during which the parties wrangled over how to apply our caselaw on the speedy trial statute, whether the speedy trial period had been tolled by continuances or other motions attributable to the defense, and whether it mattered that the Commonwealth did not nolle prosse the unlawful wounding charge earlier. The circuit court denied McCalla's motion to dismiss, concluding that the competency evaluation tolled the speedy trial clock, but also noting that the tolling may not matter since a new speedy trial clock had started with the malicious wounding indictment. The court then also granted the motion to nolle prosse the unlawful wounding indictment.

On April 1, 2024, McCalla entered a conditional guilty plea to the lesser-included offense of unlawful wounding, reserving the right to appeal the circuit court's ruling on his motion to dismiss. McCalla now appeals.

ANALYSIS

A defendant charged with a felony who is "held continuously in custody [after a probable cause finding], shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months." Code § 19.2-243. "The five-month requirement of Code § 19.2-243 translates to 152 and a fraction days." *Turner v. Commonwealth*, 68 Va. App. 72, 78 (2017) (quoting *Moten v. Commonwealth*, 7 Va. App. 438, 441 (1988)). "On appeal, a statutory speedy trial challenge presents a mixed question of law and fact. The Court reviews legal questions de novo, while giving deference to the trial court's factual findings." *Young v. Commonwealth*, 297 Va. 443, 450 (2019).[3]

_____

[3] McCalla does not argue that his right to speedy trial under either the United States or Virginia Constitutions was violated.

- 4 -

The June 26, 2023 indictment for unlawful wounding was the first probable cause finding against McCalla, starting the statutory speedy trial clock for his offense.[4] But the parties diverge on what the "offense" is. McCalla argues he was arrested for malicious wounding, then indicted for *unlawful* wounding, then indicted for malicious wounding, and that this is all the same offense against Temme from November 2021. Thus, since he was "held continuously in custody" after his June 26 indictment, the plain text of Code § 19.2-243 requires that he be "forever discharged from prosecution for such offense" because a trial on his offense against Temme did not start within five months of his June 26 indictment. The Commonwealth, on the other hand, argues that malicious wounding is a separate offense entirely, but also that it does not matter because the second indictment was obtained before the speedy trial clock ran on the original charge. Below, the parties and the trial court struggled to reconcile our various precedents interpreting the statute.

We untangle this knot by first considering what "offense" means in the context of Code § 19.2-243 and ultimately agree with McCalla that the subsequent malicious wounding indictment was for the same "offense" as the prior unlawful wounding indictment. Then, while the statute says a defendant "shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months," we observe that our precedent has recognized numerous extratextual exceptions to that rule. One long-recognized exception is that a new indictment for the same "offense" starts a new speedy trial clock under Code § 19.2-243—so long as the new indictment is brought before the speedy trial clock runs on the original probable cause finding. Applying that exception here, we find the malicious wounding indictment was issued before the expiration of the speedy trial clock triggered by the unlawful wounding indictment.

---

[4] Under Code § 19.2-243, "[i]f there was no preliminary hearing . . . the commencement of the running" of the speedy trial clock "shall be from the date an indictment or presentment is found against the accused."

1. "Offense," as used in the speedy trial statute, refers to all charges "based on the same act or transaction."

In addition to constitutional protections guaranteeing a right to a speedy trial, Virginia has provided for additional statutory protections to ensure a speedy trial:

> Where a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court . . . .
>
> If there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused, the commencement of the running of the five-month . . . period[] . . . shall be from the date an indictment or presentment is found against the accused.

Code § 19.2-243. McCalla argues that his indictments for malicious and unlawful wounding were for the same "offense" for purposes of the speedy trial statute. The Commonwealth disagrees, arguing that the malicious wounding indictment constituted a new offense, warranting a new speedy trial clock.

In *Clark v. Commonwealth*, 4 Va. App. 3 (1987), we explained that the purpose of the speedy trial statute is "to assure the defendant's right to a speedy trial and society's interest in 'swift and certain justice.'" *Id.* at 5 (quoting *Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978)). "To allow the prosecution to circumvent this by 'delaying trial on one charge and subsequently proceeding on another closely related charge' foils both society's and a defendant's interest in speedy justice." *Id.* at 6 (quoting *State v. Tharp*, 406 N.E.2d 1242, 1246 (Ind. App. 1980)). We adopted the definition of offense used by the ABA Standards for Criminal Justice § 12-4.1, at 12.43 (2d ed. 1980), defining it to include any charge "based on the same conduct, upon a single criminal episode or upon a common plan." *Clark*, 4 Va. App. at 6. We also cited with approval the Indiana Court of Appeals' decision in *Tharp*, 406 N.E.2d at 1246, which held that

> a defendant should be discharged from prosecution of a related charge growing out of the "same transaction, incident, events, or set of facts, which facts or events had occurred and were known or, in the exercise of due diligence, should have been known to the state, and which related charge could have been joined with the initial charge."

*Clark*, 4 Va. App. at 6 (quoting *Tharp*, 406 N.E.2d at 1246). And we concluded that "[t]he conspiracy charges and the underlying substantive offenses were based on the same act or transaction and thus could be joined for trial," so discharge from prosecution for the substantive offenses also barred the Commonwealth from "prosecuting conspiracy charges based on the same offenses." *Id.* at 7.

The Commonwealth suggests that the holding in *Clark* is unique to the facts of that case—where the underlying substantive charge was dismissed after the speedy trial clock expired and then the Commonwealth brought a conspiracy count by superseding indictment. But the holding in *Clark* that "offense" means the same "act or transaction" is much broader, and one we have reiterated since. In *Ford v. Commonwealth*, 33 Va. App. 682 (2000), we confirmed that "offense" includes "related offenses [that] could be joined for trial and tried by the same jurisdiction." *Id.* at 694. Because "the federal probation violation and the state's substantive offense could not be joined for trial or even tried by the same sovereign," there was no speedy trial violation in that case. *Id.*

Applying our precedent here, McCalla's malicious wounding and unlawful wounding charges involve the "same conduct" and the "same transaction, incident, events, or set of facts"—his injuring Temme. Thus, for purposes of Code § 19.2-243, the two indictments originate from the same offense. And under the plain text of Code § 19.2-243, a defendant "shall be forever discharged from prosecution" for that offense if no trial is commenced within 152 (and a fraction) days from the first probable cause determination—here, June 26, 2023. But there are exceptions to that rule, both stated within the statute and created by this Court's precedent.

2. There are textual and extratextual exceptions to Virginia's statutory speedy trial clock.

In the speedy trial statute, which was last amended in 2025, the General Assembly identified eight periods of time that are excluded from the speedy trial clock. Periods of delay incurred for these reasons do not count:

> 1. By evaluations or restoration related to his competency or insanity pursuant to Chapter 11 (§ 19.2-167 et seq.) or by reason of his confinement in a hospital for care and observation;
>
> 2. By the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or accident;
>
> 3. By the granting of a separate trial at the request of a person indicted jointly with others for a felony;
>
> 4. By continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth, or by reason of his escaping from jail or failing to appear according to his recognizance;
>
> 5. By continuance ordered pursuant to subsection I or J of § 18.2-472.1 or subsection C or D of § 19.2-187.1;
>
> 6. By the inability of the jury to agree in their verdict; or
>
> 7. By a natural disaster, civil disorder, or act of God.

Code § 19.2-243. "[T]he time during the pendency of any appeal in appellate court shall not be included as applying to the provisions of this section" is also excepted under the statute. *Id.* The statute does not address, however, what happens if an indictment is nolle prossed or if the trial is delayed by other actions of the prosecution.

Our statutory interpretation practices are well-enshrined. When a statute is "clear and unambiguous, '[t]he question . . . is not what the legislature intended to enact, but what is the meaning of that which it did enact.'" *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541 (2016) (alterations in original) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). We determine the legislature's intent "by what the statute says and not by what we think it should have

said." *Id.* at 541-42 (quoting *Carter*, 204 Va. at 346). "[T]he paramount principle of statutory interpretation is 'to interpret the statute as written.'" *Id.* at 542 (quoting *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221 (1941)). What is more, "[c]ourts are not permitted to rewrite statutes," as such a task is "a legislative function." *Jackson v. Fid. & Deposit Co.*, 269 Va. 303, 313 (2005) (quoting *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944)).

But our precedent interpreting the speedy trial statute deviates from these rules. Starting as early as nearly 200 years ago, our Supreme Court considered a predecessor to our modern speedy trial statute[5] and, to avoid "practical mischief" and potential gamesmanship on the part of the defendant, the Court rejected the notion that its role was "to adhere to the strict letter of this law, regardless of its reason and spirit, and of the effects and consequences of our construction." *Commonwealth v. Adcock*, 49 Va. (8 Gratt.) 661, 675, 676 (1851).

As the speedy trial statute has evolved, our appellate courts have continued to characterize the spirit and purpose of the law as to "provide for speedy trial exceptions in circumstances 'beyond the control of the trial judge and the parties,' when delays are warranted to 'ensure a fair trial to both

---

[5] Under the speedy trial statute at the time,

> Every person charged with felony and remanded by the examining Court to a Circuit Superior court for trial, shall be forever discharged from the crime whenever there shall have been three terms after his examination, at which the failure to try the case was not caused by his insanity, or the witnesses for the Commonwealth having been enticed or kept away, or detained or prevented from attending the Court by sickness or some inevitable accident, or did not proceed from a continuance granted on his own motion, or from inability of the jury to agree in their verdict.

Va. Code ch. 208, § 36, at 778 (1849).
An "examination" functioned like a preliminary hearing. *See, e.g., Commonwealth v. Jackson*, 276 Va. 184, 199-200, n* (2008) (using "preliminary examination" and "preliminary hearing" interchangeably). So under this version of the speedy trial statute, the prosecution had to try a case within three terms after the preliminary hearing took place or the defendant was "forever discharged from the crime," unless one of the listed exceptions applied.

the accused and the Commonwealth.'" *Wallace v. Commonwealth*, 65 Va. App. 80, 94 (2015) (quoting *Schwartz v. Commonwealth*, 45 Va. App. 407, 426 (2005)). One motivating throughline in our precedent is that a defendant not be rewarded for his own actions that led to delay: "[t]he exceptions, both express and implied, often look to the defendant's actions that tend to delay the trial." *Moten*, 7 Va. App. at 442. And in general, the delineated exceptions have been interpreted as a non-exhaustive set. Instead, "the exceptions stated in the statute are not meant to be all-inclusive, and other exceptions of a similar nature are implied." *Hudson v. Commonwealth*, 267 Va. 36, 41 (2004).[6]

In our modern era of statutory interpretation, we have explained that many of the extratextual exceptions are nonetheless tied to the statute's text. This approach is reflected in our treatment of the statute's exception for defense motions to continue. In *Stephens v. Commonwealth*, 225 Va. 224 (1983), for example, the occasion for the delay was the defendant's decision to move to suppress—"an act which necessitated a slowdown of the judicial process." *Id.* at 233. Thus "[a]lthough defendant did not make a formal motion for a continuance, he was the moving party in a proceeding which necessitated the continuance, and he should not be permitted to take advantage of the delay thus occasioned." *Id.* at 233-34. Likewise, "[i]n *Cantwell*, we refused to allow a defendant to take advantage of the delay necessitated by his filing of six motions with over thirty pages of supporting memoranda just two weeks before trial." *Moten*, 7 Va. App. at 442 (citing *Cantwell v. Commonwealth*, 2 Va. App. 606 (1986)). And in *Moten*, we found a defendant's delay in cooperating with a sanity evaluation after requesting the evaluation "for his

---

[6] This conclusion is an exception to the "time-honored principle *expressio unius est exclusio alterius*" that otherwise applies whenever a statute includes a list of included, or excluded items. *Va. Dep't of Health v. NRV Real Est., LLC*, 278 Va. 181, 187-88 (2009). The maxim that "the mention of specific items in a statute implies that all items omitted were not intended to be included" is a recognition of "the competence of the legislature to choose its words with care." *Id.* at 188.

- 10 -

benefit" had to be counted against him when it came to the speedy trial statute. *Id.* at 444.[7] Each of the defense actions "necessitated a slow-down of the judicial process" and thus were fairly implied from, or akin to, the statute's express exception for defense motions to continue.[8] *Id.* at 442 (quoting *Stephens*, 225 Va. at 233).

Turning back to this case, the exception relevant here is of a different kind because it covers an action taken by the Commonwealth, a nolle prosse, and the result is not the mere tolling of the speedy trial clock but a new clock altogether. If the prosecution nolle prosses an indictment, and the "second indictment for an alleged criminal act is obtained *before* the speedy trial statute expires on the first prosecution," there is no violation of the speedy trial statute. *Ashby v. Commonwealth*, 33 Va. App. 540, 546-47 (2000) (emphasis added). Instead, a new speedy trial clock begins with the second indictment. *Id.*[9]

This exception originated in the *Adcock* case discussed earlier and applied to dismissals and reindictments initiated by defense motions to dismiss. 49 Va. 661. In this way, it was not unlike other exceptions tied to defense actions that led to delay and concerns about gamesmanship. If a defendant noticed a flaw in the indictment and waited until the last day of the speedy trial clock to

---

[7] In 2025, the General Assembly amended the statute to expressly exempt periods of time related to "evaluations or restoration related to his competency or insanity." H.B. 1845 (Chapter 81 of the 2025 Regular Session).

[8] Not every defense motion tolls the speedy trial clock, however. If the motion could have been ruled on at the time of trial, or before trial without slowing down the judicial process, then no tolling takes place. *See, e.g.*, *Turner*, 68 Va. App. at 84 (finding a defense motion *in limine* could have been ruled on at the time of trial); *Robbs v. Commonwealth*, 252 Va. 433, 436 (1996) (finding the 20-day period it took to rule on a defendant's motion to suppress was not attributable to the defendant because "[n]othing in the record show[ed] that []the filing of the motion [']necessitated a slow-down of the judicial process'" (quoting *Stephens*, 225 Va. at 233)).

[9] The Commonwealth argues that McCalla's proposed definition of "offense," the one we affirm here, conflicts with *Ashby* and other cases holding that a superseding indictment triggers a new speedy trial clock. We think they are best understood as establishing an exception to the speedy trial statute, not as changing the definition of "offense."

move to dismiss it, the prosecution should not be forever foreclosed from bringing a new charge. *Id.* at 674 (explaining that a contrary rule would "allow the accused to take advantage of his own wrong if he has been successful in keeping the Commonwealth at bay for more than three terms on the defective indictment, [and] reward[] him with an acquittal for it").

But the exception later grew to cover motions to dismiss filed by the Commonwealth, despite the different incentives and policy concerns at stake. *Brooks v. Peyton*, 210 Va. 318, 322 (1969) ("When an original indictment is supplanted by a second indictment, the terms contemplated by the statute are to be counted from the time of the second indictment.").[10] The Supreme Court then affirmed that a second indictment would trigger a new speedy trial clock even when the "motion for *nolle prosequi* comes close in time to the running of a defendant's [original] speedy trial period." *Harris v. Commonwealth*, 258 Va. 576, 585 (1999). This expansion is unmoored from what we have recognized as the animating purpose of the statute—providing a speedy trial except in "circumstances 'beyond the control of the trial judge and the parties.'" *Wallace*, 65 Va. App. at 94 (quoting *Schwartz*, 45 Va. App. at 426).[11] Following *Harris*, the exception inflated again to cover circumstances like the one in this case, where a motion to dismiss or nolle prosse was not even filed before the original speedy trial clock expired, so long as the later indictment supplanted the original before the clock ran out. *Ashby*, 33 Va. App. at 540.

---

[10] *Brooks* provides more support for the definition of "offense" first set out in *Clark*. Brooks was first indicted for larceny and later indicted for robbery. *Brooks*, 210 Va. at 322. If these charges reflected different offenses for purposes of the speedy trial statute, the statute would not have applied in the first place and there would have been no need to create the exception for a superseding indictment.

[11] As a result, it is irrelevant that the Commonwealth admitted that the delay here was not due to factors beyond its control and that seeking a new indictment simply "fell through the cracks" because the prosecutor was focused on a different trial.

*Clark* now illustrates the outer boundary of this principle. 4 Va. App. at 3. If a new indictment is obtained for the same offense and *after* the speedy trial clock for the original indictment expired, then the new indictment must be dismissed under the statute. *Id.*

These exceptions have developed in our appellate courts as a matter of policy, and our judicially determined policy is more expansive than how the majority of other jurisdictions with similar speedy trial statutes handle the matter of prosecution-initiated dismissals followed by new indictments for the same offense. For example, the federal speedy trial statute states that the time period between a dismissal by the prosecution and a new indictment is merely tolled from the speedy trial clock which otherwise continues to run. 18 U.S.C. § 3161(h)(5).[12] Of the states that have a speedy trial statute that requires a trial to take place in a set number of days (like Virginia's) and that have faced the question of how to handle a nolle prosse followed by a new indictment, most apply the federal rule—a nolle prosse followed by a new indictment for the same crime never resets a speedy trial clock, and the time period between dismissal and the new charge is usually

_____

[12] Dismissals initiated by the defense are treated differently, and the same way that Virginia treats all dismissals. If a defense motion is granted, the speedy trial clock resets with the new indictment. 18 U.S.C. § 3161(d)(1).

tolled.[13]  Some other states hold that a new speedy trial clock starts with a new indictment, but are

clear that this rule applies only if the prosecution has not acted in bad faith.[14]

---

[13] *See, e.g.*, Alaska R. Crim. 45(c)(2) ("If a charge is dismissed by the prosecution, the refiling of the charge shall not extend the time."); Ark. R. Crim. P. 28.3(f) (excluding from the speedy trial calculation "[t]he time between a dismissal or nolle prosequi upon motion of the prosecuting attorney for good cause shown, and the time the charge is later filed for the same offense or an offense required to be joined with that offense"); *Ciprotti v. State*, 369 S.E.2d 337, 339 (Ga. Ct. App. 1988) ("The entry of an order of nolle prosequi in a case does not prevent a defendant as a matter of law from claiming the benefits of [the speedy trial statute]."); *Stinson v. State*, 797 N.E.2d 352, 354 (Ind. Ct. App. 2003) ("Our supreme court has repeatedly held that while the dismissal and refiling of the same charges does not reset the one-year period, it does toll the clock for the actual days between dismissal and refiling (or arrest)."); Mass. R. Crim. P. 36(2)(D) ("If the complaint or indictment is dismissed by the prosecution and thereafter a charge is filed against the defendant for the same or a related offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge [shall be excluded from speedy trial calculations]."); *People v. Wickham*, 503 N.W.2d 701, 702 (Mich. Ct. App. 1993) (holding the time between dismissal without prejudice and reinstatement of a charge is not attributed to either party because there is no pending charge in the interim); *State v. Butterfly*, 377 P.3d 1191, 1197 (Mont. 2016) ("[T]he time period from the dismissal of the charge initially filed . . . to the filing of the [new] charge . . . is not counted for purposes of determining the length of the delay."); *State v. Batiste*,  437 N.W.2d 125, 128-29 (Neb. 1989) (holding the time between dismissal and refiling of a charge is not includable); *People v. Lomax*, 406 N.E.2d 793, 795 (N.Y. 1980) ("Obviously, if there can be only one criminal action for any given set of charges, there also can be only one date which marks the 'commencement' of the action, the date on which the first accusatory paper is filed."); *State v. Bonarrigo*, 402 N.E.2d 530, 535 (Ohio 1980) (noting that the time period between a nolle-prossed charge and a later indictment based on the same conduct is tolled from clock); Wash. R. Crim. 3.3(e)(4) (excluding "[t]he time between the dismissal of a charge and the refiling of the same or related charge" from speedy trial calculation).

[14] *See, e.g.*, *People v. Walker*, 252 P.3d 551, 552 (Colo. App. 2011) ("There is an exception to the rule that the refiling of previously dismissed charges results in a resetting of the speedy trial clock. . . .  [I]t applies only where a defendant 'affirmatively establish[es]' that the prosecution 'indiscriminately dismiss[ed] and refile[d] charges in order to avoid' the statutory speedy trial mandate." (all but first and second alterations in original) (quoting *Meehan v. Cnty. Ct.*, 762 P.2d 725, 726 (Colo. App. 1988))); *People v. Weddell*, 939 N.E.2d 504, 513 (Ill. App. Ct. 2010) (where the state's nolle prosse tolled the speedy-trial term because defendant failed to show that the state intended to evade the speedy-trial statute, gain a tactical advantage over defendant, or otherwise frustrate his due process interests); *State v. Cuezze*, 589 P.2d 626, 630 (Kan. 1979) ("Absent a showing of necessity, the State cannot dismiss . . . and refile . . . and avoid the time limitations [of] the statute.").  While our Court has not expressly addressed whether this exception applies in Virginia, we have at least noted the Commonwealth's lack of "improper motives" in seeking a nolle prosse as potentially relevant to the analysis. *Presley v. Commonwealth*, 2 Va. App. 348, 351 (1986).

Our precedent, however, is clear, even if the rationale for creating this particular exception is not. Whether the exception continues to make sense under our modern statutory interpretation practices, a question that was raised and debated at oral argument, is ultimately a question for the Supreme Court or the legislature.[15] In Virginia, so long as a second indictment relating to the same offense underlying an earlier indictment is brought before the speedy trial clock ran on that earlier indictment, the speedy trial clock resets.

3. The second indictment was filed before the speedy trial clock for the original indictment expired, after factoring in delays attributable to McCalla.

McCalla argues the speedy trial clock triggered by the unlawful wounding indictment expired on December 5, 2023,[16] so the new indictment on December 18, 2023 was too late. But we agree with the trial court and the Commonwealth that the clock was tolled for periods of time between June 26, 2023 and December 18, 2023 and that after that time is excluded, the malicious wounding indictment was brought before the speedy trial clock ran out.

We have already detailed the many exclusions to the statutory speedy trial clock in Code § 19.2-243. "The five-month speedy trial period . . . is tolled" whenever an exception applies. *Heath v. Commonwealth*, 261 Va. 389, 393 (2001). This tolling occurs even if, along the way, there were delays followed by a trial date set within the speedy trial clock. *Howard v. Commonwealth*, 55 Va. App. 417, 424 (2009) (holding that if a defendant agrees to a

---

[15] In *Jennings v. Commonwealth*, 82 Va. App. 692 (2024) (en banc), this Court overturned its own prior decisions that had "ignored the plain statutory language . . . in favor of presumed legislative intent and public policy rationales." *Id.* at 707. We explained the "legislative acquiescence 'rule of construction' only applies 'in instances where we have found that the statutory language is ambiguous.'" *Id.* at 706 n.6 (quoting *Off. of Att'y Gen. v. State Corp. Comm'n*, 288 Va. 183, 191 n.10 (2014)). Here, however, the number of cases applying this exception from both this Court and the Supreme Court would require reconsideration by the Supreme Court or the legislature.

[16] McCalla concedes that the period between July 17 and July 26 counts against him under the statute because the court granted continuances to allow McCalla time to decide whether to plead guilty or proceed to trial.

- 15 -

continuance—even if "the new [trial] date is within the speedy trial limit"—the defendant's actions still "effectively toll[] the running of the speedy trial statute"). "[T]he burden of demonstrating that a delay in commencing trial is excused under Code § 19.2-243 lies upon the Commonwealth." *Heath v. Commonwealth*, 32 Va. App. 176, 181 (2000) (quoting *Robinson v. Commonwealth*, 28 Va. App. 148, 153 (1998)).

The statute expressly excludes delays "[b]y evaluations or restoration related to his competency or insanity pursuant to Chapter 11 (§ 19.2-167 et seq.) or by reason of his confinement in a hospital for care and observation." Code § 19.2-243(1). McCalla's counsel moved for a competency evaluation on October 17. Not until November 13 did the evaluator determine that McCalla was competent to stand trial. McCalla argues that the 27 days between October 17 and November 13 did not cause delay because, when he requested the evaluation, the trial was set to begin on December 4—a date within the speedy trial clock.[17] What is more, according to McCalla, at the status conference on November 13, the Commonwealth did not ask for a continuance of the December 4 trial date. But the fact that the "new date [wa]s within the speedy trial limit" does not prevent the statutory tolling from taking place. *Howard*, 55 Va. App. at 424.

Despite this, McCalla argues the motion for a competency evaluation did not cause a delay in the ultimate trial date because the competency evaluation was completed more than two weeks before trial was set to begin. Yet the trial court made a factual determination that the competency evaluation did in fact cause delay in the trial—a determination to which we must defer unless it was plainly wrong or without evidence to support it. *See Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008). The court noted that McCalla had been found

---

[17] Here, McCalla's argument is inconsistent with his concession that the delay from July 17 to July 26, 2023 is tolled under the speedy trial clock because the continuances were granted at his request, even though the ultimate trial date was set within the speedy trial clock as calculated by McCalla.

incompetent in the past and credited the Commonwealth's argument that it would not make sense to "schedule trials, bring in witnesses" and be ready for trial while "waiting for a report to come back." Because there is credible evidence in the record to support the trial court's factual finding that the competency evaluation tolled the speedy trial period, we find that the Commonwealth has carried its burden to show that the second indictment occurred within the statutory speedy trial period.[18]

## CONCLUSION

We conclude that although McCalla is correct that the unlawful wounding and malicious wounding indictments arose from the same "offense" for purposes of Code § 19.2-243, the statutory speedy trial period applicable to the original indictment was tolled by delays attributable to McCalla. Accordingly, the Commonwealth obtained the superseding malicious wounding indictment before the original speedy trial period—properly calculated with the relevant tolling intervals—had expired.

*Affirmed.*

---

[18] Because the tolling based on the competency evaluation was sufficient to bring the disposition of McCalla's malicious wounding charge within the speedy trial clock, we do not reach the Commonwealth's arguments about other potential reasons for tolling, which include McCalla's earlier request for an evaluation for mental health evidence and his counsel's rejection of earlier trial dates due to his schedule.